## ADAMS EXPRESS CO. *v.* DENVER & R. G. RY. CO.*

*(Circuit Court, D. Colorado.   June 6, 1883.)*

1. ACTS OF TERRITORIAL LEGISLATURE NOT FEDERAL STATUTES — CORPORATION CREATED BY A TERRITORIAL LEGISLATURE, NO RIGHT TO SUE IN FEDERAL COURT.

   The legislative power to be exercised by a territorial legislature is the legislative power of the territory, and not of the United States.   Territorial statutes have a distinct and well-defined character of their own.   A corporation created by the territorial legislature of Colorado is not a federal corporation, and cannot, therefore, sue in the United States courts as such, even if it were conceded that corporations organized under the laws of the United States possess the right to sue in those courts.

2. FEDERAL CORPORATION — RIGHT TO SUE IN FEDERAL COURTS—JURISDICTION.

   The fact that a suit is by or against a federal corporation is not, of itself, sufficient to confer jurisdiction upon a federal court.   A case arises under a law of the United States when some question is presented involving the construction of some provision thereof, or when some right or privilege is claimed thereunder.

3. GRANT OF RIGHT OF WAY THROUGH PUBLIC DOMAIN—EFFECT OF—JURISDICTION.

   An act of congress granting to a railway company, organized under territorial legislation, right of way through the public domain, does not create the corporation, but only grants to an existing corporation certain rights, and constitutes no ground of jurisdiction on the part of the federal courts in a case in which the cause of action does not in any sense rest upon or grow out of the grant of such right of way.

4. PRACTICE — SUPPLEMENTAL BILL BRINGING IN PARTIES NOT AUTHORIZED TO SUE, NOT MAINTAINABLE—OUSTER OF JURISDICTION.

   Bill having been filed by the Adams Express Company, which, being a foreign corporation, having the right to sue in this court, a supplemental bill joining, as co-plaintiff, Wells, Fargo & Co., a corporation created by act of the territorial legislature of Colorado, will not be allowed.   It cannot be maintained that the complainant in a suit may voluntarily transfer all or a part of his interest in the subject-matter of the litigation to a citizen of the same state with the defendant without ousting the jurisdiction.

This is a bill in equity instituted for the purpose of establishing the right of the complainant, the Adams Express Company, to carry on the express business upon the line of the railway of the respondent, and to enjoin the respondent from interfering with the exercise of that right.   A preliminary injunction was granted.   Subsequently the complainant applied to the court for leave to file a supplemental bill, and to bring in, as co-complainant, Wells, Fargo & Co., a corporation organized under the laws of the territory of Colorado.   This, upon the ground that since the filing of the original bill and the joining

*From the Colorado Law Reporter.

of issue thereon, Wells, Fargo & Co. has become and now is a copartner with the Adams Express Company in the express business on the defendant's railway.    The written contract between these two corporations is in evidence, and the parties are not agreed as to its force and effect.    The complainant, on the one hand, insists that it provides simply for the establishment of a community of interest between the two express companies in the express business upon the respondent's line; while the respondent insists that it amounts to a complete transfer by the original complainant to Wells, Fargo & Co. of the whole of said business, coupled with a stipulation that this litigation may be carried on, if necessary, in the name of the original complainant, and the business may be transacted in its name.    The respondent opposed this application for leave to join Wells, Fargo & Co., as co-plaintiff, upon various grounds, which are stated in the opinion.    The respondent having filed a supplemental answer alleging that complainant has, since the institution of this suit, parted with all its interest in the subject-matter thereof, and having taken proof tending to support this allegation, thereupon moves to dismiss the bill.    It appears that the respondent and Wells, Fargo & Co. are both corporations organized under the laws of the territory of Colorado.    The other facts, so far as they are deemed material, are stated in the opinion.

*Charles W. Blair* and *Clarence A. Seward*, for complainant.

*Lyman K. Bass* and *Wolcott & Milburn*, for respondent.

McCRARY, J.    We are to consider—*First*, the motion of complainant for leave to file a supplemental bill, and bring in Wells, Fargo & Co. as co-complainant; and, *second*, the motion of respondent to dismiss the bill on the ground that complainant has parted with all its interest in the subject-matter of the suit.

In considering the first motion, counsel have discussed at length the question of the force and effect of the contract whereby it is claimed the complainant and Wells, Fargo & Co. have become jointly interested in carrying on the express business upon the line of respondent's railway until the termination of this suit.    If it be claimed that by virtue of this agreement Wells, Fargo & Co. acquired any right to carry on the express business upon the railroad that it did not possess before, I cannot assent to the claim.    The complainant never had any exclusive property in the right to carry on the express business over respondent's railroad.    The right belongs alike to all express companies.    One of such companies cannot monopolize it, nor take from nor convey to another the privilege of exercising it.    It is,

however, no doubt true that these two express companies could con solidate and become one company, and as such have the right to carry on the express business, and if such a consolidation were alleged in this case, doubtless the consolidated company could, if possessing the proper citizenship, be substituted as complainant. But it is insisted that the two companies have not consolidated, but have agreed that the express business now controlled by both parties shall, so far as the conduct of the same in the state of Colorado and the territories of Utah and New Mexico are concerned, be conducted for their joint, common benefit. This view of the contract is strengthened by the fact that it is provided in the contract, which is set forth in the supplemental bill, that the express business upon the line of the respondent's railway shall be carried on in the name of the Adams Express company for the joint benefit of both the express companies, but under the exclusive control of Wells, Fargo & Co. The partnership thus constituted by the terms of the agreement is to continue only pending this suit; and in case a decree is obtained establishing the right of both companies, or Wells, Fargo & Co. alone, to carry on the express business on such railway line, then the partnership is to be dissolved, and Wells, Fargo & Co. is to have the sole right to conduct the same. It is further provided that if this agreement is held to affect the right of the complainant to prosecute this suit, the same shall become canceled, abrogated, and annulled.

If it were necessary now to decide the question, I should certainly be strongly inclined to say that this is not a *bona fide* agreement to consolidate the two express companies, or to form a partnership between them for the purpose of jointly conducting the express business on the respondent's railway. It would seem to me to be an agreement, the ultimate purpose of which is to transfer from complainant to Wells, Fargo & Co. the right to carry on the business, and to give to the latter the benefit of any decree which may be rendered herein. If such be the true construction of the contract, it would seem to be obnoxious to the objection that it is an attempt to trade or traffic in that which, in its nature, is a right or privilege common to all persons engaged in the express business, and which cannot be private property in the hands of any one. It would also seem to be obnoxious to the objection that it is an attempt to sell and assign a mere right to litigate. It is not, however, necessary at present to determine finally the question of the force and effect of the written contract between these two express companies. For if we assume that the contract is valid, and that it confers upon Wells, Fargo & Co. a

substantial right, we have then to determine whether it is a right which, as against the respondent, can be enforced in this court, both Wells, Fargo & Co. and respondent being corporations organized under the laws of the territory of Colorado. In order to meet this difficulty, the counsel for the complainant insist, in the first place, that Wells, Fargo & Co. is a federal corporation, and, as such, entitled to sue and be sued in the federal courts, irrespective of the subject-matter. Is Wells, Fargo & Co. a federal corporation? It is a corporation organized under a special act of the legislature of the territory of Colorado, and the argument is that, inasmuch as the territory was organized under and by virtue of an act of congress, the acts of the territorial legislature must be regarded as acts passed by the authority of the United States, and are to be treated as federal statutes. This argument is not sound. The act of congress to provide a temporary government of Colorado did not authorize the territorial legislature to exercise any of the powers of congress, but rather the legislative power of the territory. The authority of the people of the territory, through their legislature, to make laws for themselves within certain limits, was recognized. The language of the fourth section of the act is "that the legislative power and authority of the said territory shall be vested in the governor and the legislative assembly."

The legislative power to be exercised by the territorial legislature is the legislative power of the territory, not that of the United States. Both states and territories, in a certain sense, derive their existence from the legislation of congress, but the jurisdiction and authority exercised, either by a state or territory, is that of a state or territory, and not that of congress. Territorial statutes have a distinct and well-defined character of their own. The people of a territory, when authorized to form a territorial government, are vested with a qualified sovereignty. Congress may limit their powers, and may annul their enactments, but, subject to these limitations, the territory is a government. Its laws, unless set aside by congress or the courts, are the laws of the territory; they are not laws of the United States, within the ordinary meaning of those terms; certainly not in the sense that the acts of congress, approved by the president, are laws of the United States. It follows that Wells, Fargo & Co. is not a federal corporation, and could not, therefore, sue in this court, independently of its citizenship and of the subject-matter, even if it were conceded that every corporation organized under the laws of the United States possesses the right to sue in the federal courts. This,

however, is not conceded; on the contrary, I am of the opinion that a case cannot be said to arise under the laws of the United States, within the meaning of the act of 1875, conferring jurisdiction upon the circuit courts of the United States, simply because it is a suit by or against a corporation organized under a federal statute. Congress might, according to the decision of the supreme court of the United States in *Osborn* v. *U. S. Bank*, 9 Wheat. 739, enact that all such corporations shall have the right to sue and be sued in the federal courts, but it has not seen fit to do so. The provision of the statute is not that *any* corporation organized under a law of the United States may sue or be sued in the federal courts, but that these courts shall have cognizance of suits "arising under the constitution and laws of the United States." It has been several times held in this circuit by the writer of this opinion, with the concurrence of Mr. Justice Miller, that this language includes only cases in which some question is presented involving the construction of some provision of the constitution, or of an act of congress, or in which some right or privilege is claimed under or by virtue thereof. See *Myers* v. *Union Pac. Ry. Co.* 3 McCrary, 578; [S. C. 16 Fed. Rep. 292.]

It is, however, insisted by complainant's counsel that, even conceding this to be the true rule, this court should take jurisdiction of the supplemental bill, because, it is said, certain rights are claimed under the laws of the United States. Much of the argument upon this point is based upon the assumption that the charter of Wells, Fargo & Co., enacted by the legislature of the territory of Colorado, is a federal statute, which, as we have seen, is not so. It is, however, further insisted that the respondent, the Denver & Rio Grande Railway Company, derives certain rights and exercises certain powers by virtue of an act of congress, and that, therefore, it may be sued in this court. The respondent, like Wells, Fargo & Co., was chartered by the territory of Colorado, but an act of congress was passed granting to it the right of way over the public domain. This act of congress does not purport to create a corporation, but only to grant to an existing corporation certain rights. The respondent, the railway company, is not a common carrier by virtue of the act of congress, but by virtue of its charter granted by the legislature of Colorado. Nor does the complainant base its right to relief upon anything contained in the right-of-way act above named. The record shows that the right claimed to the relief sought is based upon the fact that the respondent "is a public corporation and a common carrier, under the charter aforesaid," and the whole course of the

litigation in this and other similar cases shows that no right to carry on the express business upon the respondent's line of railway can be based upon or grow out of any provision of the aforesaid act of congress. The respondent is a common carrier by virtue of its charter, and its charter is an act of the territorial legislature of Colorado. It is not enough that counsel states in argument that the complainant claims under an act of congress. It must appear from the record that such claim is made, and the court must be satisfied that upon the record it can legitimately arise.

I am clearly of the opinion that Wells, Fargo & Co. and respondent are both corporations created by the laws of the territory of Colorado, and not federal corporations, and also that the rights asserted by complainant in the original and supplemental bill are not based upon and do not grow out of any law of the United States. But it is insisted that the supplemental bill will be but the continuation of the original suit, and that, therefore, the court may take jurisdiction of the same. The authorities cited to sustain this proposition are those which lay down the rule that when the jurisdiction has once attached it will not be ousted by a change in the domicile of one of the parties, or by the death of one of the parties, and the substitution of his legal representatives, even if the latter be citizens of the same state with the opposite parties. *Morgan's Heirs* v. *Morgan,* 2 Wheat. 290; *Clarke* v. *Mathewson,* 12 Pet. 164; *Dunn* v. *Clarke,* 8 Pet. 1. This doctrine has no application here. It has never been held, and cannot, I apprehend, be maintained, that the complainant in a suit may voluntarily transfer all or a part of his interest in the subject-matter of the litigation to a citizen of the same state with the defendant, without ousting the jurisdiction. If this were allowed, it would make it possible in any case for a non-resident plaintiff, who has instituted a suit in the federal court, to transfer his cause of action to a citizen of the same state with the defendant, and thus bring controversies between citizens of the same state within the federal courts. It was accordingly held, in *Dunn* v. *Clarke, supra,* that while no change in the residence or condition of the original parties can take away jurisdiction which has once attached, yet, "if other parties are made in the bill and different interests involved, it must be considered, to that extent at least, an original bill, and the jurisdiction of the circuit court must depend upon the citizenship of the parties." If, therefore, we should assume that the cause of action stated in the original bill was assignable, and that the whole or some part of it has been assigned and transferred to Wells, Fargo &

Co., still this court cannot take jurisdiction of the supplemental bill, because it presents a controversy between two Colorado corporations, and which was not a part of the original suit in the sense of being between the same parties or their privies.

My conclusion is that this court cannot take jurisdiction of the supplemental bill for the purpose of enforcing as against the respondent any right of Wells, Fargo & Co., either alone or jointly with complainant, and the motion for leave to file the proposed supplemental bill is accordingly overruled.

Upon the second question (the motion to dismiss the bill) it is only necessary to say that the complainant may be entitled to some measure of relief, notwithstanding the contract between Wells, Fargo & Co., and even if said contract should be construed in accordance with the respondent's claim. I suppose that at least some question as to the compensation to be paid the respondent for the privilege of carrying on the express business in the past may remain to be adjusted on the final hearing. Whether any other or further relief can be granted to the complainant, is not now to be considered.

The motion to dismiss is overruled.